UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHRISTOPHER JOHN,

             Plaintiff

     against

THE CITY OF NEW YORK; NYPD Police Officer Travis ADONIS, Shield 13919 Individually and in his Official Capacity; NYPD Sgt. Frank PANDULLO, 073rd Pct., Individually and in his Official Capacity; NYPD Police Officer Tosares KORCHITMET, 073rd Pct., Individually and in his Official Capacity ; NYPD Police Officer Jonathan TAVARES, Shield #30195 Individually and in his Official Capacity; NYPD Police Officers John Doe 1-2 Individually and in their Official Capacities and NYPD Police Officers Mary Roe 1-2 Individually and in their Official Capacities,

             Defendants
-------------------------------------------------------------------X

          COMPLAINT
       JURY TRIAL DEMANDED

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiff CHRISTOPHER JOHN seeks relief for the defendants' violations of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United States Constitution, including its Fourth, Fifth, Sixth and Fourteenth Amendments. Plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and for such other and further relief as to this Court seems equitable, just and proper.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including the Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. Section 1983. Jurisdiction is conferred upon this court by 42 U.S.C. § 1983 and 28

1

U.S.C.§§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## JURY TRIAL DEMANDED

3. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

4. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARITES

5. Plaintiff CHRISTOPHER JOHN is a citizen and resident of the United States and at all relevant times was a resident of the State of New York, County of Kings.

6. Defendant THE CITY OF NEW YORK is and was at all relevant times herein, a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agents in the area of law enforcement to members of the public and for which it is directly responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to public consumers of the services provided by the New York City Police Department.

7. Defendants ADONIS, PANDULLO, KORCHITMET, TAVARES, JOHN DOES and MARY ROES, are and were at all relevant times herein, duly appointed and acting officers, servants, employees and agents of defendant THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant

relied upon a walking cane to assist him; Plaintiff's walking cane was in the vehicle on the front passenger area of the car's interior.

10.     The Plaintiff was in the vicinity of the Southwest corner of Fulton Street and Van Sinderin Avenues in Brooklyn, New York when he was "pulled over" by the officers in the unmarked vehicle.

11.     Three uniformed police officers including Defendant Police Officer Travis ADONIS and defendant SGT. Frank PANDULLO approached the Plaintiff who remained seated in his car in the driver's seat.

12.     The Plaintiff was instructed to close his windows; once his windows were closed, Officer ADONIS used a tool and said that the vehicle had "excessive window tinting."

13.     Mr. John was asked to produce his driver's license and he complied with the request; Mr. John who was still seated in his car was asked if he required the cane to walk and he informed the officer that he did need the cane.

14.     The vehicle which Mr. John was operating was insured as he had just purchased it.

15.     While Mr. John's license was being inspected by defendant ADONIS, another officer remained on the passenger side of Mr. John's car with his hand on his holstered gun; defendant Sergeant PANDULLO remained at the passenger side of Mr. John's vehicle.

16.     When defendant ADONIS returned from conducting the license-check, Mr. John was ordered out of his car; Mr. John asked why he was being asked to get out of his car and he was told that he "had warrants."

herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK, and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants ADONIS, PANDULLO, KORCHITMET, TAVARES, JOHN DOES, and, MARY ROES are sued individually.

8. Defendant PANDULLO is and was at all relevant times a duly appointed and acting supervisory officer, servant, employee and agent of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, supervision, discipline and control of police officers under their command. Said individual defendant is and was at all relevant times acting under color of state law in the course and scope of his duties and functions as a supervisory officer, agent, servant and employee of defendant THE CITY OF NEW YORK and/or the New York City Police Department and were otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duties. Defendant PANDULLO is sued individually.

## STATEMENT OF FACTS

**The June 14, 2015 Arrest Through the Dismissal of All Charges**

9. On June 14, 2015 approximately 6:50 PM, the Plaintiff, Christopher John ("Plaintiff" or "Mr. John") was operating his car, a Mercedes Benz motor vehicle; the windows of Plaintiff's vehicle were all fully open; the Plaintiff is disabled and at the time

3

17. Mr. John told the officer that he did not have warrants; that he had just come from visiting someone at Rikers Island and that if he had warrants they would have not let him visit; defendant Sergeant PANDULLO, who had moved to the driver's side of the car, opened the driver's side door grabbed Mr. John by his shirt and dragged Mr. John out of his car.

18. Mr. John fell to the ground; defendant Sergeant PANDULLO and defendant ADONIS took Mr. John to the police car where he was handcuffed and put into the back seat of the police car.

19. Mr. John was taken to the 073rd Precinct and once inside he was placed in a holding area.

20. Mr. John was put against a wall; his pants were loosened and taken down; a police officer "went inside" his pants; personal property was taken from the Plaintiff, including his wallet and house keys which were not returned until four days later.

21. Mr. John remained at the 073rd Precinct for a couple of hours; he was in pain and requested to be taken to the hospital; he was rear cuffed and taken from the 073rd Precinct to the hospital for treatment of the pain he was suffering and he also needed to receive medication for his diabetes while at the hospital.

22. Mr. John was put on a gurney at the hospital face down and rear cuffed to the bed where he remained during his 5-hour hospital visit; he was given pain medication and had his glucose levels taken; following his treatment at the hospital, he was again transported in handcuffs to the 073rd precinct in Brooklyn.

23. Mr. John was fingerprinted at photographed at the police precinct but had to return to the hospital before being taken to Central Booking and the Criminal Court; an

ambulance arrived at the precinct to transport him with his feet shackled to the railing inside of the ambulance and his hands cuffed to the railing inside of the ambulance; once again, Mr. John required pain medication and treatment for his diabetes.

24. Approximately two and a half days after his arrest Mr. John finally arrived at Central Booking.

25. At central booking, Mr. John informed the officers he was a diabetic and he complained of pain; he was transported again to a hospital for treatment.

26. Mr. John remained at Central Booking for approximately a day and a half before he saw a Judge; at about the time he was arraigned, Mr. John was informed that he there "for warrants."

27. There was no credible basis for holding Mr. John on the belief that he had any outstanding arrest warrants; a warrant check conducted by Police Officer ADONIS indicated that although there was a warrant for a person using the name "Chris John," that person was 5'6;" the Plaintiff, Christopher John is and was 5'11" inches tall on the date of his arrest.

28. Defendants ADONIS, PANDULLO provided the prosecution with false information including that Mr. John had "3 active warrants"

29. Mr. John was arraigned before Judge Daniels of the Criminal Court of the City of New York on June 17, 2015 under Kings County Docket 2015KN039194.

30. Mr. John was charged with offenses and crimes of which he was wholly innocent.

31. Mr. John was released by the Criminal Court Judge in his own recognizance.

32. Mr. John was compelled to return to Court on June 22, 2015; August 3, 2015; September 24, 2015; October 15, 2015; October 23, 2015; December 7, 2015; February 9, 2016; April 12, 2016; May 2, 2016; May 25; 2016; June 30, 2016; July 20, 2016; September 12, 2016; October 28, 2016; November 1, 2016; November 4, 2016; and, December 7, 2016.

33. On December 7, 2016 all of the charges against Mr. John were dismissed against the Plaintiff (Judge Farber, Criminal Court of the City of New York, Kings County Part TP2).

**The October 25, 2015 Arrest Through Dismissal**

34. On October 25, 2015, Mr. John was in the driver's seat of his car which was parked in front of his house on Hull Street in Brooklyn, New York; Mr. John's female friend was a front seat passenger.

35. Mr. John began to drive and was followed by an unmarked police car; three officers were in the police car.

36. Mr. John drove to the stop sign on Hull Street and stopped; Mr. John put his left turning signal on and made a left turn; he continued to a light and stopped at the red traffic signal; Mr. John waited for the light to turn green and used his directional signal and proceeded once the light was green to go onto Rockaway Blvd.

37. While making the turn onto Rockaway Blvd. Mr. John was "pulled over" by police officers.

38. Police Officer defendant KORCHITMET claimed that he stopped Mr. John for failure to have used his turning signal; the claim which was the basis for stopping Mr. John was false.

39. Mr. John complied with requests that he produce his license and registration and the request that he exit his vehicle; following the request that he step outside of his vehicle, Mr. John was pushed against the back door of his car against the car and patted down.

40. Mr. John was walked back to his car accompanied by a police officer; while outside of his car, the interior and trunk of the car were searched.

41. Mr. John was transported to the 073rd Precinct where he was again patted down and was "processed;" he remained at the precinct for what he says was a total of approximately three days; he was taken by ambulance to a hospital where he remained for several hours and received pain medication and treatment for his diabetes; he was taken to central booking where he remained for about a day and a half; he was told that he had active warrants.

42. Mr. John was arraigned on October 26, 2015 and released from custody at his arraignment.

43. The charges against Mr. John were based on false information provided to the prosecution, including the false allegation that Mr. John was stopped for failing to signal; and, falsely claiming that he was stopped due to a report of "a gun."

44. Mr. John was prosecuted under Kings County Docket 2015KN069819 and required to return to Court on December 8, 2015; January 13, 2016; February 9, 2016; April 16, 2016; May 2, 2016; May 25, 2016 and June 30, 2016 and thereafter.

45. The charges against Mr. John were dismissed on December 7, 2016 before the Honorable Judge Farber, of the Criminal Court of the City of New York County of Kings.

### The April 16, 2016 Arrest Through Dismissal

46.  Mr. John was arrested on April 16, 2016 in the vicinity of Rockaway and Blake Avenues in Brooklyn at approximately 4 am.

47.  Mr. John was in his vehicle (a GMC Yukon) and was driving his female friend back to her home; Mr. John stopped his car across from her home; he put the hazard lights on; she exited his car; an unmarked police car stopped behind Mr. John's vehicle; defendant Jonathan TAVARES, Shield #30195, in plainclothes and without his shield on display, walked to Mr. John's vehicle; defendant TAVARES told Mr. John that double parking was illegal; Mr. John asked the man who he was; Mr. John was told in response, "don't worry about who I am;" defendant TAVARES ordered Mr. John out of his car; one of the other officers was by the passenger side of Mr. John's car; defendant TAVARES told Mr. John that he was "going to get out of the car one way or another" whether "I have to drag you out of the car…or you get out peacefully;" Mr. John was told that once he stepped out of the car he would be searched and that if no weapons were found, he would be free to leave; the officer opened the driver's door, removed Plaintiff's seat belt; and, grabbed him and forcibly took Mr. John out of his car.

48.  Mr. John held onto his walking cane but defendant TAVARES snatched the cane out of his hand; Mr. John stumbled and was then grabbed by the arm and pushed towards his vehicle; Mr. John was patted down; during the pat-down Mr. John was touched about his "private parts;" Mr. John was ordered to remove his shoes; one of the officers stayed with Mr. John while another officer went to Mr. John's vehicle and searched the vehicle.

49.  Mr. John's female friend had not entered her home but was outside and was holding up her phone apparently taking a video of the police encounter; Mr. John heard

the officer tell his female friend that she had to delete the video or Mr. John would be taken into custody.

50. Mr. John was handcuffed and his vehicle was removed from the location.

51. After Mr. John was in custody he was driven to a dark street where and he was taken out of the police car and told to call his female friend to tell her to delete the video; he was told that if she deleted the video, he would be released; the partner of Officer TAVARES, Police Officer John DOE kicked the still handcuffed Mr. John in the leg causing him to fall to the ground.

52. Mr. John was taken to the 073rd Precinct and from there he was taken to a hospital when he complained about being in pain and being worried about his sugar levels because of diabetes.

53. At the hospital Mr. John was given pain medication and treated with insulin; two or three days later Mr. John appeared at Central Booking; he was contacted by one of the officers who placed him under arrest and told that if he was able to contact the girl they would let him go "out the back door" without being charged or seeing a Judge; after waiting in Central Booking for approximately one day, Mr. John was arraigned on false charges including a false marijuana possession charge; and, a false weapons charge; and, a false warrant charge; he was released in his own recognizance and compelled to come back to Court on many occasions until the charges were dismissed on June 30, 2016.

54. Officer TAVARES falsely claimed and then reported to the prosecution that following his stop of the Plaintiff he smelled marijuana and that when he told the Plaintiff that he smelled marijuana the Plaintiff stated in sum and substance "yea I think I have a little weed in my pocket;" defendant Officer TAVARES falsely claimed that Mr. John

was in possession of marijuana and a gravity knife; Officer TAVARES reported these false claims to the prosecution.

55. A prosecutor's information was obtained by the District Attorney of the County of Kings involving the arrest of April 16, 2016 which charged the Plaintiff with the traffic infraction of "Stopping, Standing or Parking Prohibited in Specified Places," and "Criminal Possession of a Weapon in the Fourth Degree."

56. When Mr. John's car retrieved his car, he noticed leakage and discovered that the brake line had been damaged; because his car keys were not returned to him by the police he was required to buy a new set of car keys.

57. Mr. John was required to expend $250 dollars to repair his brakes and $30 for a new set of car keys.

58. Mr. John had $3,000 dollars USC in his car before he was stopped and the car removed; when his car was returned the 3,000 USC was missing.

59. Mr. John was arraigned under Kings County Docket #2016KN023024; on or about May 25, 2016, the District Attorney of the County of Kings moved to consolidate all of the three arrests hereinabove mentioned (the arrest of June 14, 2015; October 25, 2015; and, April 16, 2016); the Plaintiff was compelled to return to Court many times until the charges were dismissed on December 7, 2016 before the Honorable Judge Farber in the Criminal Court of the City of New York, Kings County.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**
(against Defendants ADONIS, PANDULLO, JOHN DOE 1-2 and/MARY ROE 1-2)

60. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as though more fully set forth herein.

61. By their conduct and actions in falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating the rights to substantive and procedural due process of law, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating and attempting to fabricate false evidence/a false account surrounding the events regarding plaintiff, defendants ADONIS, PANDULLO, JOHN DOE 1-2 and MARY ROE 1-2, acting under color of law and without lawful justification, intentionally, maliciously and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. Section 1983 and the United States Constitution, including the Fourth, Fifth, Sixth, and, Fourteenth Amendments.

62. As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, humiliation and was otherwise damaged and injured.

### SECOND CLAIM
### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983
(against Defendants KORCHITMET, JOHN DOE 1-2 and/MARY ROE 1-2)

63. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as though more fully set forth herein.

64. By their conduct and actions in falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating the rights to substantive and procedural due process of law, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating and attempting to fabricate false evidence/a false account surrounding the events regarding plaintiff, defendants KORCHITMET, JOHN DOE 1-2 and MARY

ROE 1-2, acting under color of law and without lawful justification, intentionally, maliciously and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. Section 1983 and the United States Constitution, including the Fourth Fifth Sixth and Fourteenth Amendments.

65. As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, humiliation and was otherwise damaged and injured.

### THIRD CLAIM
### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. §1983
(against Defendants TAVARAS, JOHN DOE 1-2 and/MARY ROE 1-2)

66. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as though more fully set forth herein.

67. By their conduct and actions in falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating the rights to substantive and procedural due process of law, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating and attempting to fabricate false evidence/a false account surrounding the events regarding plaintiff, misappropriation and mishandling of the Plaintiff's personal property, defendants TAVARAS, JOHN DOE 1-2 and MARY ROE 1-2, acting under color of law and without lawful justification, intentionally, maliciously and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. Section 1983 and the United States Constitution, including the Fourth, Fifth, Sixth, and, Fourteenth Amendments.

68. As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, humiliation and was otherwise damaged and injured.

### FOURTH CLAIM
### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. SECTION 1983
Against PANDULLO, JOHN DOE 1-2 and MARY ROE 1-2

69. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as though more fully set forth herein.

70. By their conduct and actions in falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating the rights to substantive and procedural due process of law, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating and attempting to fabricate false evidence/a false account surrounding the events regarding plaintiff, defendants PANDULLO, JOHN DOE 1-2 and MARY ROE 1-2, acting under color of law and without lawful justification, intentionally, maliciously and with deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. Section 1983 and the United States Constitution, including the Fourth, Fifth, Sixth, and, Fourteenth Amendments.

71. By failing to remedy the wrongs committed by his subordinates, and in failing to properly train, screen, supervise, or discipline his subordinates, supervisory officer Sgt. PANDULLO caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including the Fourth, Fifth, Sixth, and, Fourteenth Amendments.

72. As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, humiliation, and was otherwise damaged and injured.

### FIFTH CLAIM
### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

73. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as though more fully set forth herein.

74. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

75. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had *de facto* policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees, police officers, and of failing to inform the individual defendant's supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

76. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had *de facto* policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence." These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

77. As a result of the following, plaintiff, was deprived of his liberty, experienced injury, pain and suffering, humiliation, and was otherwise damaged.

**WHEREFORE**, the plaintiff demands the following relief jointly and severally against all of the defendants on the First through the Fourth Claims:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empaneling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorneys' fees.

e. Such other and further relief as to this Court may seem just and equitable and proper;

On Plaintiff's Fifth Claim against the City of New York, the Plaintiff demands:

a. Compensatory Damages;

b. The convening and empaneling of a jury to consider the merits of the claim;

c. Costs and interest and attorneys' fees.

Dated: New York, New York
May 31, 2018

PAUL THOMAS LAYTON, Esq. (9242)
The Layton Law Firm, PLLC
30 Vesey Street, Suite 1801
New York, New York 10007
917-923-4287
laytonlawfirmpllc@protonmail.com
Attorney for Plaintiff